## THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

GAVIN YEPA,

    Petitioner,

v.                                    No. 20-cv-1092 WJ-KBM
                                        12-cr-0163 WJ-KBM

UNITED STATES OF AMERICA,

    Respondent.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Petitioner Gavin Yepa's Motion to Vacate Federal Sentence Under 28 U.S.C. § 2255 (Motion) (CR Doc. 351).   Yepa challenges his federal conviction for first degree murder.   Having reviewed the matter *sua sponte* under Habeas Rule 4, the Court will require Yepa to show cause why the claims are not time-barred.   The Court will also direct the United States to file a reply on timeliness and the prison mailbox rule.

## BACKGROUND

Evidence at trial showed that near midnight on December 28-29, 2011, Yepa knocked on the door of his neighbor, Clint Sando, and told him that there was a woman at his house who was not breathing.   They ran to the house, where Sando found the victim's naked body on the floor covered in blood.   A later autopsy determined the victim was likely killed by a shovel that was forced 15 to 16 inches into her vagina.   Yepa proceeded to trial, where a jury convicted him of first-degree felony murder in the perpetration of aggravated sexual abuse (18 U.S.C. §§ 1153 and 1111).   The Court (Hon. M. Christina Armijo, retired) sentenced him to life imprisonment.

Yepa filed a direct appeal, arguing his statements to police should have been suppressed.

The Tenth Circuit rejected this argument and affirmed.   The United States Supreme Court denied certiorari relief on March 5, 2018.   The Judgment became the following day on March 6, 2018.   *See Rhine v. Boone*, 182 F.3d 1153, 1155 (10th Cir. 1999) (for habeas purposes, a conviction becomes final "after the United States Supreme Court has denied review").

Yepa filed the instant § 2255 Motion on October 22, 2020.   Assistant Public Defender Brian Pori (hereinafter, "Trial Counsel") admits he drafted the Motion, which includes detailed citations to law and the record.   *See* Doc. 351 at 1, 11.   However, Trial Counsel maintains that Yepa is proceeding *pro se*.   *Id.*   It appears Trial Counsel is employing this fiction because he was never appointed in this habeas matter, and because his Motion purports to raise his own ineffective assistance.   *See Coronado v. Ward,* 517 F.3d 1212, 1218 (10th Cir. 2008) (There is no right to counsel in habeas proceedings); 18 U.S.C. § 3006A(a)(2)(B) (requiring an appointment to represent a financially eligible person "seeking relief under section … 2255 of title 28").   Trial Counsel argues that he and co-counsel failed to investigate; consult an expert witness; and prepare Yepa to testify.   He also argues a life sentence is excessive.

Ordinarily, the Court would strike an unauthorized filing and require the proper party to re-file the claims.   Before addressing that issue or the merits, the Court finds it would be efficient to resolve the threshold issue of timeliness.   The Motion invokes the prison mailbox rule to overcome the time-bar in this case.   Yepa, assisted by Trial Counsel, alleges he mailed the Motion on March 8, **2019** but that it did not arrive at the Court until nineteen months later, on October 22, **2020**.   The Court will evaluate timeliness, the prison mailbox rule, and whether it will accept this allegation at face value.

**DISCUSSION**

The Motion is governed by Habeas Corpus Rule 4(b) and 28 U.S.C. § 2255. Rule 4 requires the Court to *sua sponte* dismiss any § 2255 motion where it plainly appears from the arguments and "the record of prior proceedings that the moving party is not entitled to relief." Habeas Corpus Rule 4(b). As part of the initial review process, "district courts are permitted … to consider, *sua sponte*, the timeliness of a … habeas petition." *Day v. McDonough*, 547 U.S. 198, 209 (2006).

Section 2255 motions must generally be filed within one year after a conviction becomes final. *See* 28 U.S.C. § 2255(f)(1). The limitation period can be extended where:

      a.     The petitioner was prevented from making a motion by "governmental action in violation of the Constitution or laws of the United States" § 2255(f)(2);

      b.     The motion is based on a "right [that] has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review" § 2255(f)(3); or

      c.     The petitioner could not have discovered "the facts supporting the claim … through the exercise of due diligence." § 2255(f)(4).

Equitable tolling may also available "when an inmate diligently pursues his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control." *Marsh v. Soares,* 223 F.3d 1217, 1220 (10th Cir. 2000).

As noted above, the Judgment became final on March 6, 2018, the day after the United States Supreme Court denied certiorari relief. *See Rhine*, 182 F.3d at 1155. The docket reflects no apparent tolling activity during the next year, and limitation period expired on March 6, 2019. Yepa states he delivered the Motion to prison officials on March 8, **2019**, but it allegedly did not

3

arrive at the Court until October 22, **2020**.   *See* Doc. 351 at 13.   The Motion is therefore time-barred regardless of whether the prison mailbox rule applies.   Alternatively, and for the reasons below, the Court finds that Yepa has not satisfied the requirements of the rule.

### A.   The Motion Does Not Comply with the Prison Mailbox Rule

The prison mailbox rule states that, when certain conditions are satisfied, an inmate who places a habeas petition "in the prison's internal mail system will be treated as having 'filed' on the date it is given to prison authorities for mailing to the court."   *Price v. Philpot*, 420 F.3d 1158, 1165 (10th Cir. 2005).   "[I]f the prison has a legal mail system, then the prisoner must use it as the means of proving compliance with the mailbox rule."   *Id.*   The legal mail system, "by which mail is logged in at the time and date it is received, provide a 'bright line rule' for determining the date of a pro se prisoner's filing."   *United States v. Gray*, 182 F.3d 762, 765 (10th Cir. 1999) (quotations omitted).   If the prison lacks such a system, the prisoner must "submit a declaration or notarized statement setting forth the notice's date of deposit with prison officials and attest that first-class postage was pre-paid."   *United States v. Ceballos-Martinez*, 387 F.3d 1140, 1145 (10th Cir. 2004).   The petitioner bears the burden "to show he complied with these requirements and that his filing therefore was timely under the prison mailbox rule."   *Pease v. Raemisch*, 673 Fed. App'x 877, 879 (10th Cir. 2016) (citing *Price*, 420 F.3d at 1165).   Without the benefit of the rule, a pleading is deemed "filed when it [is] received by the court."   *Price,* 420 F.3d at 1167.

Yepa's declaration states:

I, Gavin Yepa, am currently in S.H.U. custody at U.S.P. Tucson. I'm filing my 28 U.S.C. [§] 2255 today on March 8, 2019 via the mailbox rule. I'm delivering my motion to prison officials to be sent to the UNITED STATES DISTRICT COURTS, DISTRICT OF New Mexico. My legal mail has prepaid postage on it, and this motion is being filed pursuant to Houston v. Lack.

Signed and Dated on March 8, 2019.

Doc. 351 at 13.   This statement does "not say whether a legal mail system was available or, if it was, whether [Yepa] used it."   *Pease*, 673 Fed. App'x at 879 (rejecting mailbox argument).   *See also U.S. v. Miles*, 343 Fed. App'x 392, 393 (10th Cir. 2009) ("At the outset, Defendant has failed to establish that a system designed for legal mail was unavailable for him to use"); *U.S. v. McIntyre*, 551 Fed. App'x 448, 449 (10th Cir. 2014) (rejecting mailbox argument and noting petitioner "has never claimed his prison has such a system, much less alleged he used it").   Yepa's allegation that he delivered his Motion to prison officials is insufficient to shed light on the mailing system.   *See Price,* 420 F.3d at1166 ("Alleging only that [the inmate] used 'the institutional mails' is insufficient to connote use of the legal mail system."); *Brown v. McKune*, 162 Fed. App'x 795, 797 (10th Cir. 2006) (inmate's "bald assertion that he gave his … motion to prison authorities within the filing period does not meet the stringent requirements of" the mailbox rule).

In addition, while the Motion is signed under penalty of perjury, the attached declaration regarding the prison mailbox rule is not.   To take advantage of the rule, the declaration must comply with 28 U.S.C. § 1746 and contain a sworn statement under penalty of perjury that mailing statement is true and correct.   *See Price*, 420 F.3d at 1165.   Yepa has therefore failed to meet the requirements of the prison mailbox rule.

### B.   Alternatively, the Court Declines to Accept Yepa's Timeline at Face Value

Even if Yepa could cure the technical defects, "a court need not treat a document as filed on the date it was purportedly submitted to prison staff for mailing, when the gap between that date and the postmark date is so long that the claimed submission date appears implausible."   *Wolff v. California*, 236 F. Supp. 3d 1154, 1158 (C.D. Cal. 2017).   For example, numerous courts have

declined to apply the prison mailbox rule when the gap between mailing and delivery was a matter

of weeks or months.   *See Chavis v. McCulloch,* 2020 WL 5051571, at \*2 (N.D.N.Y. Aug. 27,

2020) ("[I]t is not appropriate to apply the prison mailbox rule" based a "lengthy [4 week gap] …

and absent any explanation from" the plaintiff); *Womack v. Baughman*, 2020 WL 898229, at \*4, n.

5 (E.D. Cal. Feb. 25, 2020) (refusing to apply prison mailbox rule due to 52 day gap between

signing and filing); *Inesti v. Hagan*, 2012 WL 3822224, at \*3 (S.D.N.Y. Sept. 4, 2020) (refusing

to apply the prison mailbox rule, absent further proof, where the original complaint was postmarked

one year after it was signed); *McKinney v. Lanigan*, 2019 WL 415325, at \*3 (D.N.J. Feb. 1, 2019)

(issuing order to show cause based on implausible allegation that complaint was mailed over a year

before it arrived).   Courts can also take evidence when the "veracity of the inmate's allegations—

even when sworn—is in doubt either because those allegations are themselves questionable."   *May*

*v. Mahone*, 876 F.3d 896, 899 (7th Cir. 2017) (addressing the prison mailbox rule).   *See also See*

*Brand v. Motley,* 526 F.3d 921, 925 (6th Cir. 2008) (prisoner mailbox rule may be rebutted by

contrary evidence).

        Given the nineteen-month gap between the alleged mailing date (March 8, 2019) and the

date the Motion arrived at the Court (October 22, 2020), it is not appropriate to apply the prison

mailbox rule without further proof.   This is particularly true given the condition of the mailing

envelope.   There is nothing on the envelope to indicate it was lost or misdirected.   *See* Doc. 351

at 22.   In fact, the envelope is not post-marked, nor does it contain a bar code or other notation

indicating it even travelled through the mail.   *Id.*   "According to the United States Postal Service's

Handbook PO-408, [a] postmark is … applied … on the address side of a stamped mailpiece [to]

indicate[] the location and date the Postal Service accepted custody of a mailpiece, and it cancels

affixed postage." *Mayen v. New Penn Fin.*, LLC, 2018 WL 2427177, at \*6 (S.D. Cal. May 29, 2018) (quoting United States Postal Service Handbook PO-408, at 1-1.3 Postmarks, https://about.usps.com/handbooks/po408/ch1_003.htm). Yepa's envelope contains three Forever stamps, which do not appear to have been cancelled. *See* Doc. 341 at 22. The Court also finds it curious that Trial Counsel – who undertook the matter without an appointment and allegedly drafted the Motion in early 2019 – failed to inquire when it did not arrive. Trial Counsel is still listed as an "Attorney to be Noticed" in CM/ECF. Yepa also never inquired, even though the Clerk's Office normally returns a file-stamped copy of *pro se* pleadings.

For all of these reasons, the Motion does not establish an entitlement to the prisoner mailbox rule. The Motion would be time-barred by two days with the benefit of the rule. Without it, the Motion is time-barred by over nineteen months. Yepa must show cause within thirty (30) days of entry of this Order why the Motion should not be dismissed as time-barred. The failure to timely respond and overcome the time-bar may result in dismissal of the Motion with prejudice. Trial Counsel is reminded that he has not sought an appointment in this habeas case. The Court will also direct the United States to file a reply within twenty-one (21) days after filing of the show-cause response. The United States should address timeliness, address any show-cause arguments; and attach any prison mail logs (if available) for the time-frame in question (*i.e.,* March and April 2019 and October 2020). The Court may obtain prison communication logs between Trial Counsel and Yepa, to shed additional light on when Trial Counsel drafted the Motion, but such records are not required at this time.

**IT IS ORDERED** that within thirty (30) days of entry of this Order, Yepa must show-cause in writing why his § 2255 claims should not be dismissed as time-barred.

**IT IS FURTHER ORDERED** that the Clerk's Office shall **FORWARD** to the United States Attorney's Office a copy of Yepa's Motion **(CR Doc. 351),** along with a copy of this Memorandum Opinion and Order.

**IT IS FINALLY ORDERED** that the United States shall **FILE** a reply within twenty-one (21) days after entry of Yepa's show-cause response.   The reply should address timeliness, address any show-cause arguments; and attach any prison mail logs (if available) during the time-frame in question.

**SO ORDERED**.

_____

WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE